Brockenbrough, J.
The first question to be decided is one of fact; namely, whether lieutenant John Marston did serve to the end of the war. A great difference of opinion heretofore prevailed between this court on the one side, and chancellor Wythe and the general court on the other, as to the precise period when the war ended within the meaning of the act of May 1779, ch. 6. The latter, held that it terminated at the signature of the preliminary articles of peace in November 1782, but the former decided that the governor’s proclamation of April 22d 1783 fixed the period of its termination. Although the decision on that point was much disapproved of by some of the judges of this court in Lilly's case, 1 Leigh 525. yet it was not overruled by them. That decision, whether right or wrong, has been subsequently acquiesced in, and must now be considered as settled.
I have never been able to ascertain, with any certainty, by what law of this commonwealth the courts have allowed to the officers in the state service, who served to the end of the war, commutation of five years full pay with six per cent, interest from the date of the proclamation of peace, in lieu of half pay for life, which was allowed to them by the act of 1779. It was al *39 lowed, by a resolution of congress of March 1783, to the officers on continental establishment, on the representation of the officers themselves; 11 Hen. Stat. at large, p. 557. Judge Green intimates in Markham's case, 1 Leigh 524. that it was allowed here under a construction of the act of 1790, ch. 21.13 Hen. Stat. at large, p. 131. which enacts, “that the same compensation. of half pay should be extended to those officers of the state line who continued in actual service to the end of the war, as was allowed to the officers of the continental line:'' he says that the construction put upon this act was, that the same commutation which had been given by congress to the officers of the continental line, should be given to the officers of the state line. I think it probable that such is the source from which sprung the practice of giving our officers the commutation. I think it was a farfetched construction; but as the court of appeals has sanctioned it for more than forty years, that question ought now to be considered as settled. If therefore the representative of lieutenant Marston can prove that he served till the end of the war, the judgment of the court of Henrico giving him full pay for five years with interest as aforesaid, should be affirmed; otherwise not.
The first piece of evidence introduced to prove that Marston served till the end of the war, is the certificate of col. Dabney, dated 30th April 1783, stating that he had served upwards of three years in the service of this state. It is shewn by a document in the cause, that he was a cadet in Gibson's regiment in 1778, and that his commission as first lieutenant bears date the 3d July 1779. It is alleged, that this regiment was in continental service at: the north till the spring of 1780, when it returned to Virginia; that he then entered Dabney's legion, in the service of the state; and as he served three years in that service, it is inferred that he served from the spring of 1780 to the spring of 1783, that is, to the *40 end of the war, in that service. Unfortunately for this _ . argument, Dabney*s legion was not m existence m 1780, It was not formed till after November 1781, when an act passed directing the officers of the regiments and corps in the service of the state, to be reduced, and the corps consolidated into one or more. 10 Hen. Stat. at large, p. 440. Dabney’s legion was formed under that law. It could not have been in that legion, then, that lieutenant Marston served three years, though he might have been and probably was an officer in it after its formation. He was probably an officer in that legion in February and April 1782, as he was at that time reported as in service, by the board of officers which sat in Richmond at those periods. But it does not follow that he was in service on the 22d April 1783. Christopher Roane and some others were also reported to be in service by that same board, who were deraigned on the 9th February 1783, and yet they did not serve to the end of the war. As lieutenant Marston’s name is not associated with that of Roane and others at the time of that deraignment, nor yet returned as having served till April 1783, the probability is, that he was somehow out of service before Roane.
The certificate of col. Dabney was obviously given to enable lieutenant Marston to obtain his land bounty, and it has served that purpose. It made no difference, whether the officer belonged to the Virginia line on stale establishment, or the same line on continental establishment ; he was entitled to the same quantity of land; 10 Hen. Stat. at large, p. 159-60. For three years service, either officer was to have an unconditional title to his land ; 11 Id. p. 83-4. Colonel Dabney, knowing that Marston had served part of his time in the Virginia line in the service of the continent, and part in the same line in state service, though he had not served a full three years in either service, but more than three in both taken together, might well certify (without criti *41 cally weighing his words) that he had served more than three years in the service of the state. It is not at all probable that he had in his mind the exact time when he entered or came out of the service. This certificate then does not prove, that Marston served to the end of the war.
The appellee then resorts to parol evidence. The affidavits of Wilcox and Christian may be thrown out of the case, as they are ex parte. But if admitted, they fail to prove the requisite fact. The former says, that lieutenant Marston was an officer in the regular service 11 during the revolutionhe does not assert, that he served throughout the whole of the revolution : if he had only served two or three years, it would be truly said that he served during the revolution. Mr. Christian goes further, and says, that he served three years to the north, and then returned, and served to the end of the war. But he does not tell us what was, in his estimation, the end of the war in Virginia; whether it was the capture of Cornwallis, the signature of the preliminary articles of peace, the proclamation of the governor, or the definitive treaty of peace, which terminated it. This evidence is entirely too vague.
But the principal reliance is on the evidence of major Gibbs. He says, that in 1780, lieutenant Marston was attached to a Virginia state regiment, commonly called Dabney’s legion, and he served in that regiment until the close of the war in April 1783. In a former ex parte affidavit, he shews, that he knew the 22d April 1783 to be the period that the courts had fixed on as the termination of the war. Notwithstanding his particularity, however, his memory has failed; for Dabney’s legion was not formed, as I before remarked, in 1780, nor until after the session of assembly of November 1781. And as to his serving in it until April 1783, that is contradicted by an official document filed since the rendition of this judgment; namely, the return of *42 officers of the state legion, signed by Charles Dabney, lieutenant colonel commandant. This document is only a copy; but it is filed in the auditor’s office as the groundwork of his official acts; and moreover, since the argument of this cause here, the original return has been found in the papers of the suit of Innis v. Roane & al. and its verity will not now be questioned. That list shews that one of the officers retired on the 1st January 1783 ; others were deraigned on the 8th February ; and others, amongst whom was col. Dabney, served till the 23d April 1783. In that return, the name of lieutenant Marston is not to be found. If the administrator of captain Thomas Ewell.has obtained a judgment for commutation with interest, on the ground that he served in'Dabney’s legion to the end of the war, although bis name is not on this list, it only shews, that that plaintiff has obtained more than he was entitled to, as I fear is the case with too many others. I have no hesitation in saying, that the judgment of the circuit superiour court must be reversed.
The next question is, whether the decision of the auditor is to be affirmed. He admits that the board of field officers who sat in 1782, reported lieutenant Mars-ton as entitled to half pay. That report has been adjudged to be authentic, by this court in Lilly’s case. He was then reported to be “ in service.” Between that period and the termination of the war, he must have either resigned, or become a supernumerary by the subsequent reductions of the regiments, which are known to have taken place. I cannot presume that he resigned his commission at that late period. The commonwealth, indeed, does not allege it, and if she did, the burthen of proof would be on her. I think, then, we ought to conclude that he thereafter became a supernumerary.
Although this court decided twice, that a supernumerary was not entitled to half pay, unless he. served to the end of the war, being required to do so, yet a con *43 trary decision was given by the court in Lilly's case, and many subsequent judgments have been rendered in conformity with it, and much money has been drawn from our state treasury, and reimbursed by the federal treasury. It is, therefore, too late to inquire into the correctness of the decision in Lilly's case, in all cases where the officers became supernumerary after the pussing of the act of 1779. Whether we can reexamine it in that class of cases where the officer became supernumerary before the passing of that act, will be determined in another case now before us.
The ground of the auditor’s decision is, that the act of congress of July 1832 authorizes the' settlement of this claim by the secretary of the treasury of the U. States. I think it is true that the 3d section of the act of congress does provide for the settlement and adjustment of this claim; but does it justify the state courts in refusing to give judgment for it? The officers included in the act of May 1779, ch. 6. are entitled to their half pay, “ provided congress do not make some tantamount provision for them.” The tantamount provision herein mentioned is an original provision to be made by congress, equivalent to the provision made by the state, not dependant on any provision made by the state, or any adjudication therein on the subject matter of the claim, and which would entirely release the state from making the provision desired to be made. The act of congress of 1832 directs the secretary to adjust and settle these claims, on the “principles of the half pay cases already decided in the supreme court of appeals" of this state. It may be, that the secretary may think this case does not come within those principles; or he may be unwilling to decide on the claim, unless it is declared to be sanctioned by those principles, either by our auditor of public accounts, or by our courts. If we reject the claim on that account, the party may lose his claim altogether, although we are satisfied that it is a *44 perfectly just claim. We ought therefore to act on this ^ *7 *7 claim according to the evidence, and the law of 1779, without reference to the act of congress.
I am therefore of opinion, that the auditor’s decision ought to be reversed, and that he be directed to issue a warrant on the treasury in favour of the appellee, for lieutenant Marston’s half pay.
The other judges concurred in the opinion, that lieutenant Marston did not continue in actual service until the end of the war, and therefore was not entitled to commutation of five years full pay with interest from the end of the war; but that he was an officer of the Virgitiia line on the state establishment, who became supernumerary after the act of May 1779, ch. 6. and was therefore entitled, upon the authority of Lilly’s case (that being directly in point) to his half pay during his life.
Therefore, the court reversed the judgment of the circuit superiour court, and then reversed the decision of the auditor also, and directed that officer to issue a warrant in favour of the appellee, for his testator’s half pay from the 14th April 1782 (that appearing to have been the date of “ the determination of his command or service”) until the 1st January 1798, which was about the date of his .death as nearly as it could be ascertained.*

 There was an error committed by the reporter, in the report of Lilly’s case, 1 Leigh 525, 6. It is there stated, that the circuit court of Henrico reversed the auditor’s decision, and ordered him to issue a warrant in favour of Lilly’s administrator, for the amount of five years full pay, with interest from the 2 2d April 1783; and that that judgment was affirmed. But, in fact, the circuit court gave judgment, not for the commutation, but for the half pay that accrued to Lilly during his life, without interest; and that was the judgment which this court affirmed. This court expressly decided, that no interest should be paid; see judge Green’s opinion, in the same case, Id. 538. and in Markham’s case, Id. 523, 4.